FILED

FEB 0 5 2009

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SAMIRA KAADY, Personal Representative            CV. 06-1269-PK
of the ESTATE OF FOUAD KAADY,
SAMIRA KAADY, RACHID KAADY,
VANIA KAADY, ANDREA KAADY

                                                 OPINION AND ORDER
            Plaintiffs,

v.

CITY OF SANDY, a municipal corporation
of the State of Oregon, CLACKAMAS
COUNTY, by and through the Clackamas
County Sheriff's Office, a political
subdivision of the State of Oregon,
WILLIAM BERGIN, DAVID WILLARD,
JOHN DOES 1-10, in their individual and
official capacities
            Defendants.

_____

PAPAK, Magistrate Judge:

       This is an action for money damages under 42 U.S.C. § 1983 and Oregon law against the

two law enforcement officers who shot and killed Fouad Kaady and against the City of Sandy

Page 1 - OPINION AND ORDER

and Clackamas County who employed, trained and supervised those officers. This court has

jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343 and 1367. Now before the court is plaintiff's

motion for reconsideration of the court's order granting summary judgment to the City of Sandy

and Clackamas County. Plaintiff's motion is denied for the reasons set forth below.

## BACKGROUND

On November 26, 2008, the court ruled on defendants' motions for summary judgment.

The court granted summary judgment on the claims brought by plaintiffs Rachid, Vania and

Andrea Kaady, leaving only one plaintiff, Samira Kaady. The court denied the individual

officers' motions for summary judgment. One officer, defendant Bergin, filed a notice of appeal.

The court granted summary judgment to the City of Sandy and Clackamas County. The court

found that plaintiffs failed to establish that the official policymakers' approval of their officers'

actions was tantamount to the announcement of or confirmation of a policy for purposes of

municipal liability. *Kaady v. City of Sandy*, No. 06-269, 2008 U.S. Dist. LEXIS 96626, at *66-

72 (Nov. 26, 2008).

In reaching its ruling on municipal liability, the court relied on the following facts:

Following the shooting, the Clackamas County Sheriff's Office assigned a team to
conduct a criminal investigation. The team included representatives of the district
attorney's office and the medical examiner. An investigator interviewed Bergin
the day after the shooting. No one interviewed Willard, however, until four days
after the incident, which was the soonest that Willard's attorney informed
investigators that he was ready to provide a statement. Investigators also
interviewed witnesses. Several witnesses indicated in subsequent declarations
that they thought investigators asked leading questions that favored the officers
and that investigators had misstated their answers to questions.

The district attorney received the results of the investigation and reviewed them
for possible criminal charges. The district attorney presented charges to a grand
jury. The grand jury returned a not true bill.

After the grand jury results, the Clackamas County Sheriff's Office convened a Shooting Review Board to review the Kaady incident. The Board was comprised of Clackamas County Sheriff's Office deputies and supervisors. The Board met seven times and reviewed training curricula, the 911 tapes and dispatch summaries of 911 calls that appeared on the officers' on-board computers, and heard testimony from other members of the Clackamas County Sheriff's Office regarding crisis intervention and other procedures.

The Board concluded that Willard complied with Clackamas County Sheriff's Office policy and training. As a result, Craig Roberts, the Clackamas County Sheriff, decided not to take any disciplinary action against Willard. Roberts confirmed in his declaration that he is the final policymaker for the Sheriff's Office.

In November 2005, following the release of the Clackamas County Shooting Review Board report and the grand jury investigation, Sandy Police Chief Skelton and his two sergeants conducted a review of the existing reports of the incident. Skelton indicated that he limited his review to the existing reports because he did not have the resources or the experience to call witnesses, although his officers accompanied sheriff deputies to some of the interviews during the Clackamas County investigation. Skelton also testified that he decided to have supervisory personnel review the reports because the department was a "tight-knit group" and the shooting had affected everyone. Skelton himself reviewed Bergin's and Willard's reports of the shooting, along with the Shooting Review Board's report. Skelton concluded, based on that information, that Officer Bergin's use of force and deadly force was legally justified and reasonable under the circumstances.

*Id.* at *21-23. Kaady now asks the court to reconsider its ruling that the City of Sandy and Clackamas County are entitled to summary judgment.

## LEGAL STANDARD

A court order "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Where a party seeks reconsideration of a non-final order, the court has "inherent jurisdiction to modify, alter or revoke it." *United States v. Martin*, 226 F.3d 1042, 1048-1049 (9th Cir. 2000). Generally, "[r]econsideration is appropriate if the district court (1) is presented with newly discovered

Page 3 - OPINION AND ORDER

evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

## DISCUSSION

### I.    Jurisdiction

"Absent a stay, . . . an appeal of an interlocutory order does not ordinarily deprive the district court of jurisdiction except with regard to the matters that are the subject of the appeal." *Britton v. Co-op Banking Group*, 916 F.2d 1405, 1412 (9th Cir. 1990) (internal citation omitted). Here, plaintiff's motion for reconsideration asks this court to reexamine its ruling granting the City of Sandy and Clackamas County summary judgment. This ruling is unrelated to Bergin's appeal. I therefore conclude that this court has jurisdiction to address plaintiff's motion.

### II.    Municipal Liability

Municipal liability under § 1983 requires proof of a policy or custom that caused the deprivation of the plaintiff's constitutional rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). There are three ways to prove existence of a municipal policy or custom: 1) by showing the constitutional violation "was the result of a longstanding practice or custom which constitutes standard operating procedure"; 2) by proving that the decision-making official was, as a matter of state law, a final policymaking authority whose acts may constitute official policy; 3) by showing an official with final policymaking authority either "delegated that authority to, or ratified the decision of a subordinate." *Price v. Sery*, 513 F.3d 962, 966 (internal citation omitted). Here,

Kaady pursues municipal liability under a theory of ratification.[1]  Neither party disputes that the sheriff is the final policymaker for the Clackamas County Sheriffs Office and the chief of police is the final policymaker for the City of Sandy Police Department.

Title 42 U.S.C. § 1983 provides that a person who, under the color of law "*subjects, or causes to be subjected*, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitutions and laws, shall be liable to the party injured. . . ."  42 U.S.C. § 1983 (emphasis added).   The Supreme Court jurisprudence establishing that a municipality may be liable for a single act by a policymaker did not change the § 1983 causation requirement.  In *Pembaur*, the Court held that, where "*action is directed by* those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly."  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) (plurality opinion) (emphasis added).  Similarly, in *Praprotnik*, the Court explained "governments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights."  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988) (plurality opinion) (citing *Monell*, 436 U.S. at 691); *see also Bd. of the County Comm'rs v. Brown*, 520 U.S. 397, 405 (1997) ("To the extent that we have recognized a cause of action under § 1983 based on a single decision attributable to a municipality, we have done so only where the evidence  . . . proved fault and causation.").  Thus, a municipality may be liable under a ratification theory when its policymakers know of and

_____

[1]Kaady argues that the court's ruling mistakenly applied the wrong municipal liability test to the ratification claim.  The ruling addressed the issues raised in the briefing and, in doing so, described and hewed to § 1983's causation requirement, as described herein.  I rejected Kaady's municipal liability claim, not because she failed to show widespread abuse, but because she failed to establish causation.

approve and subordinate's decision and that approval caused the constitutional deprivation. *See Brown*, 520 U.S. at 404 ("The plaintiff must . . . demonstrate that . . . the municipality was the 'moving force' behind the injury alleged.").

Here, Kaady contends that knowledge of an officer's unconstitutional actions, and a statement that the officer acted in accordance with policy is sufficient to establish municipal liability based on a ratification theory. Kaady is correct that, "To show ratification, a plaintiff must prove that the 'authorized policymakers approve a subordinate's decision and the basis for it.'" *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999) (quoting *Praprotnik*, 485 U.S. at 127). Kaady, however, overlook that knowledge and approval are necessary, but not sufficient, to prove municipal liability based on ratification. A § 1983 plaintiff must also prove causation. *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (plaintiff must prove both that one of the three circumstances supporting municipal liability existed and that "the circumstance was (1) the cause in fact and (2) the proximate cause of the constitutional deprivation.") (internal citations omitted); *Hammond v. County of Madera*, 859 F.2d 797, 801 (9th Cir. 1988) (plaintiff must prove that the municipal conduct caused a deprivation of plaintiff's rights).

Although the Ninth Circuit cases that address ratification often do not explicitly discuss causation, the case law demonstrates that a plaintiff must prove that the municipality's ratification led to the constitutional deprivation. Thus, the Ninth Circuit has held that a plaintiff can establish municipal liability based on ratification where the plaintiff produced evidence that a policymaker knew and affirmatively approved of a subordinate's "ongoing constitutional violations." *Christie*, 176 F.3d at 1240. In *Christie*, for example, one plaintiff failed to establish ratification because he did not present evidence that the policymaker knew of the constitutional

violation before it ceased. *Id.* at 1239. The other plaintiff, however, succeeded in defeating

summary judgment where the evidence showed that the policymaker knew and approved of

ongoing violations. *Id.* at 1240; *see also Lytle v. Carl*, 382 F.3d 978, 988 (9th Cir. 2004) (facts

demonstrated the policymaker knew of and actively participated in unconstitutional conduct);

*Ulrich v. City of San Francisco,* 308 F.3d 968, 986 (9th Cir. 2002) (remanding for district court

to determine ratification where the evidence showed that the subordinate consulted with

policymakers on her decision not to allow the plaintiff to rescind his resignation).

    The Ninth Circuit has also held that a plaintiff could establish ratification where the

policymaker took some affirmative action that itself continued the constitutional deprivation.

For example, in *Fuller v. City of Oakland*, the plaintiff alleged the conduct of an investigation

into her sexual harassment charge deprived her of equal protection and the court held that the

police chief's decision to uphold the findings of the glaringly deficient investigation could be the

basis for municipal liability. 47 F.3d 1522, 1534 (9th Cir. 1995); *see also Hammond*, 859 F.2d at

802-803 (policymakers approved and recorded invalid right-of-way deeds that resulted in a

deprivation of the plaintiff's constitutional rights). The foregoing cases demonstrate that the

Ninth Circuit has allowed a plaintiff to proceed on a ratification theory only in cases where the

plaintiff presented evidence to show the constitutional violation was not a fait accompli at the

time of the ratification.

    Undaunted by the weight of this authority, Kaady cites *Fuller* and *Larez v. City of Los

Angeles*, 946 F.2d 630 (9th Cir. 1991), in support of her position that a law enforcement

policymaker's approval of a post-incident investigation is sufficient to establish municipal

liability for an officer's acts that preceded that investigation. In both of those cases, however, the

Page 7 - OPINION AND ORDER

plaintiff alleged that the investigation procedure itself caused the constitutional deprivation. In *Fuller*, as noted, the plaintiff presented evidence that the police chief's approval furthered a sexually biased investigation process. 47 F.3d at 1544. Similarly, in *Larez*, the plaintiffs produced sufficient evidence of a policy of "inadequate citizen complaint procedures which have the effect of encouraging the excessive use of force," when an expert concluded that officers almost never suffered discipline as a result of a complaint, officers acted as if they had impunity, and the police chief approved a deficient investigation that exonerated the officers who violated the plaintiff's rights. 946 F.2d at 635, 647.[2]

Here, unlike in *Larez* and *Fuller*, Kaady does not assert that the investigation was constitutionally inadequate. Rather, she asserts municipal liability based solely on the decisions by the Sandy Chief of Police and the Clackamas County Sheriff to adopt the Shooting Review Board's conclusion that their officers acted in accordance with policy. Kaady, however, cites no controlling authority that supports her theory. Instead, she directs this court to *Ashley v. Sutton*, 492 F. Supp. 2d 1230, 1250 (D. Or. 2007), which I find unpersuasive in light of the Ninth Circuit case law set forth above.

Both the Supreme Court and Ninth Circuit case law demonstrate that a plaintiff cannot establish municipal liability based on ratification unless the ratification caused the constitutional

---

[2] In the supervisory liability portion of the *Larez* opinion, the court stated that a supervisor can be liable "for his own culpable action or inaction in the training, supervision or control of subordinates; for his acquiescence in the constitutional deprivation ... or for conduct that showed a reckless or callous indifference to the rights of others." 946 F.2d at 646. The court concluded that the police chief's act "ratifying the investigation" of the plaintiff's complaint, instead of disciplining the officer involved, was sufficient evidence to support his supervisory liability. *Id.* While the Ninth Circuit used the word "ratifying," that portion of the opinion did not address municipal liability and does not aid Kaady here.

Page 8 - OPINION AND ORDER

deprivation.  The court's earlier ruling followed this precedent.  It is not clearly erroneous.

## CONCLUSION

Kaady's Motion for Reconsideration (#138) is denied.

IT IS SO ORDERED.

Dated this 5th day of February, 2009.

Honorable Paul Papak
United States Magistrate Judge

Page 9 - OPINION AND ORDER